IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : CASE NO. 4:13-CR-24-CDL-MSH |
| | : |
| LORENZO HICKSON, | : |
| | : |
| Defendant. | : |
| _____ | |

**ORDER AND RECOMMENDATION**

Federal prisoner Lorenzo Hickson has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1) (ECF Nos. 142, 144).  He also moves for appointment of counsel (ECF No. 143) to represent him on the motion.  For the reasons stated below, Hickson's request for appointed counsel is denied, and it is recommended that his motion for compassionate release also be denied.

**BACKGROUND**

On February 20, 2014, Hickson pleaded guilty under a superseding indictment to a single count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. § 2.  Superseding Indictment 1, ECF No. 37; Change of Plea, ECF No. 60.  The plea was conditioned upon Hickson's right to appeal the Court's Order (ECF No. 51) denying his motion to suppress (ECF Nos. 11, 12).  Plea Agreement 8, ECF No. 61.  Following Petitioner's guilty plea, the United States Probation Office ("USPO") prepared a pre-sentence report ("PSR") (ECF No. 73) using the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  Because the amount of crack

cocaine attributable to Hickson was at least 280 grams but less than 840 grams, USPO calculated a base offense level of 32 based on the drug quantity table, U.S.S.G. § 2D1.1(c), in effect at the time. PSR ¶ 19. USPO then added two levels because of Hickson's obstruction of justice during the traffic stop leading to his arrest. *Id.* ¶¶ 14, 23. This resulted in an adjusted offense level of 34.

Hickson, however, qualified as a career offender based on at least two prior felony convictions of either a crime of violence or a controlled substance. *Id.* ¶ 25. Hickson's prior crimes included: (1) a 1991 DeKalb County, Georgia conviction for aggravated assault and criminal attempt to commit armed robbery, (2) a 1999 Fulton County, Georgia conviction for possession of cocaine with intent to distribute, and (3) a 1999 Fayette County, Georgia conviction for sale of cocaine. *Id.* ¶¶ 35, 39, 40. As the statutory maximum sentence for Hickson's offense was life, his offense level was enhanced to 37. *Id.* ¶¶ 25-26; 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii); U.S.S.G. § 4B1.1(b)(1). He was then given a three level reduction for acceptance of responsibility and entering a guilty plea in a timely manner, reducing his offense level to 34. PSR ¶¶ 27-29. Hickson's criminal history score was 11, and had he not been a career offender, this would have placed him in criminal history category V. *Id.* ¶ 44. As a career offender, however, his criminal history category was automatically VI, resulting in a Guideline sentencing range of 262 to 327 months. *Id.* ¶¶ 44, 63. On May 20, 2014, the Court sentenced Hickson to 295 months imprisonment followed by 5 years supervised release. Judgment 2-3, ECF No. 77. The sentence was ordered to run consecutive to any state court sentences for parole violation. *Id.* at 2; PSR ¶¶ 39-40.

2

As permitted by the plea agreement, Hickson appealed (ECF No. 79) the denial of his motion to suppress. On January 19, 2016, the United States Court of Appeals for the Eleventh Circuit affirmed the Court's order denying the motion to suppress. Order 2, *United States v. Hickson*, No. 14-12365 (11th Cir. Jan. 19, 2016), ECF No. 97. The Eleventh Circuit issued its mandate (ECF No. 98) on April 6, 2016. Hickson then moved to vacate his sentence (ECF Nos. 101, 104) on ineffective assistance of counsel grounds. The Court denied (ECF No. 121) his motion on February 26, 2019. On May 26, 2020, the Court received Hickson's first motion for compassionate release (ECF No. 138). In this motion, he argued that he should be released because of the risk of contracting Covid-19 and his underlying health conditions, including hypertension, diabetes, chronic kidney disease, and end-stage renal failure. 1st Mot. for Compassionate Release 1, ECF No. 138. This motion was denied (ECF No. 139) on June 29, 2020. Hickson subsequently filed a motion for reconsideration (ECF No. 140) which he later amended (ECF No. 141). These motions remain pending.[1]

The Court received Hickson's second motion for compassionate release (ECF No. 142) on December 15, 2020. In January 2021, he supplemented his motion (ECF No. 144) and also requested (ECF No. 143) appointed counsel to represent him in his motion for compassionate release. These motions are ripe for review.

## DISCUSSION

**I.     Motion for Appointment of Counsel**

---

[1] The Court recommends that these motions (ECF Nos. 140, 141) be **DENIED AS MOOT** in light of the Court's consideration of the most recent motion for compassionate release.

3

Hickson moves for appointment of counsel to represent him on his motion for compassionate release. Mot. to Appoint Counsel 1, ECF No. 143. There is no statutory or constitutional right to appointment of counsel for compassionate release motions. *See United States v. Courson*, 835 F. App'x 546, 547 (11th Cir. 2021) (per curiam) (citing *United States v. Webb*, 565 F.3d 789, 794-95 (11th Cir. 2009), in connection with motion under 18 U.S.C. § 3582(c)(2)). Instead, the matter is left to the discretion of the district court, "guided by factors such as the complexity of the legal issues." *Id.* Here, the legal issues are not complex, and, as discussed below, the Court finds that Hickson has shown extraordinary and compelling reasons for release. The Court's ultimate recommendation against release, however, is based on consideration of the factors set forth in 18 U.S.C. § 3553(a). Therefore, Hickson's motion for appointed counsel is denied.

## II. Motion for Compassionate Release

### A. Hickson's Motion and Supplemental Motion

Hickson filed his second motion for compassionate release on December 1, 2020. 2d Mot. for Compassionate Release 8, ECF No. 142.[2] At the time, he had not contracted Covid-19. *Id.* at 3. He noted, however, that he was likely to contract Covid-19 due to the conditions at his place of confinement—the United States Medical Center for Federal

---

[2] Although the Court did not receive Hickson's motion until December 15, 2020, it was signed on December 1, 2020. 2d Mot. for Compassionate Release 8, ECF No. 142. "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (internal quotation marks omitted). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *Id.*

Prisoners in Springfield, Missouri ("Springfield MCFP"). *Id.* at 2-3. He argued that due to his underlying medical conditions, he was at high risk of becoming extremely ill or dying if he contracted the disease. *Id.* at 2. These underlying conditions included chronic kidney disease, type-II diabetes, and hypertension. *Id.* at 1. Hickson also argued that his end-stage renal disease was a terminal illness and that he would die without a kidney transplant. *Id.* He was not yet on dialysis, however, and he claimed that Federal Bureau of Prisons ("BOP") policies did not allow kidney transplants unless the prisoner was on dialysis. *Id.* at 4. Further, according to Hickson, BOP was not approving transplants due to the pandemic. 2d Mot. for Compassionate Release 4. Hickson asserted that his family members had met and concluded that "if [he] had truly changed [his] life," "most" of them were willing to be evaluated to see if they could be kidney donors. *Id.* Finally, Hickson argued that he was not a danger to the community if released. *Id.* at 5. He noted that he was fifty years old and that during his eight years of incarceration, his mother had died from diabetes-related complications and his father had died of a drug overdose. *Id.* He stated that this, along with the willingness of his family members to be organ donors, had motivated him to want to lead a better lifestyle. *Id.* at 5-6. Hickson stated that if he is released, he would live with his fiancé in Lawrenceville, Georgia. *Id.* at 6.

Hickson supplemented his motion for compassionate release on January 3, 2021. Suppl. Mot. for Compassionate Release 2, ECF No. 144. By that time, there had been significant developments in his health condition. He had contracted Covid-19, which led to development of a 104-degree fever and hospitalization. *Id.* at 1. He underwent surgery to allow access for emergency dialysis, and upon return to Springfield MCFP general

5

population, he required a walker to ambulate.  *Id.*  He stated that he had other significant complications resulting from Covid-19, including respiratory problems, extreme diarrhea, and insomnia.  *Id.*  He also argued that he faced the risk of re-exposure to Covid-19.  *Id.*

    B.    <u>Legal Framework</u>

A district court "'may not modify a term of imprisonment once it has been imposed except' under certain circumstances."  *United States v. Harris*, 989 F.3d 908, 909 (11th Cir. 2021) (quoting 18 U.S.C. § 3582(c)).  Applicable to Hickson is the compassionate release exception provided in 18 U.S.C. § 3582(c)(1).  Under that code section, a prisoner may obtain compassionate release if, "after considering the factors set forth in [18 U.S.C. § 3553(a)]," the court finds that "extraordinary and compelling reasons warrant such reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Thus, the statue requires a district court to conduct a two-step process.  First, it must determine whether "extraordinary and compelling reasons" warrant compassionate release.  Second, if the district court determines that there are extraordinary and compelling reasons, it must decide whether compassionate release is appropriate after considering the factors set forth in 18 U.S.C. § 3553(a).

As noted above, § 3582(c)(1)(A) requires that any sentence reduction be consistent with Sentencing Commission policy statements.  The Sentencing Commission's policy statement for compassionate release is found at U.S.S.G. § 1B1.13.  The commentary to the policy statement describes the circumstances that may qualify as extraordinary and

compelling reasons for a sentence reduction. As relevant to Hickson, one circumstance is where:

> The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

U.S.S.G. § 1B1.13 cmt. n.1(A)(i). Another circumstance is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). In addition to deciding whether extraordinary and compelling circumstances warrant a sentence reduction, the policy statement also requires a court to determine whether a prisoner is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Despite the mandatory language of § 3582(c)(1)(A), however, an issue has arisen as to whether a district court is bound by the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13. Prior to enactment of the First Step Act of 2018 ("Act"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), compassionate release was available only upon a motion from the Director of the BOP. The Act authorized prisoners to move directly for a sentence reduction in district court after exhausting all administrative remedies. Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239. However, the policy statements were not amended after the amendment allowing prisoners to file direct motions for compassionate release. Thus, when adopted, the policy statements applied only to motions filed by the Director of

7

the BOP. This has led several circuits to hold that the policy statements are not "applicable" to prisoner-filed motions for compassionate release. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). The Eleventh Circuit has not yet reached the issue, but it has acknowledged a discrepancy between the amended statute and the policy statements. *United States v. Tallon*, No. 20-12596, 2021 WL 727806, at *1 (11th Cir. Feb. 25, 2021) (per curiam); *see also Harris*, 989 F.3d at 912 n.2. Here, to give Hickson the greatest possible scope of review, the Court has assumed that its discretion to find extraordinary and compelling reasons is not limited by the policy statements.

  C. <u>Defendant Satisfies the Extraordinary and Compelling Reasons Standard</u>

  Following submission of Hickson's motion, the Court obtained his medical records (ECF No. 145) from the BOP. They demonstrate a marked decline in Hickson's medical condition following his contraction of Covid-19 in December 2020. Medical Record ("MR") 417, 421, 830, ECF No. 145. According to the records, Covid-19 worsened Hickson's renal disease to the point that he required hemodialysis. MR 330. Subsequently, he was able to transition to peritoneal dialysis, but his chronic kidney disease is at stage five, which is end-stage renal disease. MR 330, 344, 354, 1111; Dr. Jasmine Shaikh, M.D., *What are the 5 Stages of Chronic Kidney Disease?* (Medically Reviewed Nov. 1, 2020), MedicineNet, https://www.medicinenet.com/what_are_the_5_stages_of_chronic_kidney _disease/article.htm. He also suffered a stroke. MR 7, 102, 231.

  Even under the policy statements, Hickson shows extraordinary and compelling reasons for a sentence reduction. His end-stage renal disease specifically qualifies under

8

U.S.S.G. § 1B1.13 cmt. n.1(A)(i), which lists "end-stage organ disease" as an example of a medical condition with a terminal illness. *See United States v. Canty*, 3:94-cr-169-HLA-MCR, 2021 WL 1526351, at *5 (M.D. Fla. Apr. 19, 2021) (finding that end-stage renal disease was an extraordinary and compelling reason under commentary to U.S.S.G. § 1B1.13); *United States v. Soliz*, No. 1:16CR00028-001, 2020 WL 6042092, at *1 (W.D. Va. Oct. 13, 2020) (noting that the Government did not contest that "end-stage renal disease is a 'terminal illness,' a medical condition that per se qualifies under the policy statement as an extraordinary and compelling reason to warrant a reduction in his sentence" (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)(i)); *United States v. Cotinola*, 487 F. Supp. 3d 1132, 1136 (D.N.M. 2020) ("Specifically, the Court finds that Mr. Cotinola's dialysis-dependent end-stage kidney failure falls within the Commission's definition of a qualifying 'terminal illness.'" (quoting § 1B1.13 cmt. n.1(A)(i)). Moreover, his condition likely also qualifies under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii) as a "serious physical or medical condition." *See Cotinola*, 487 F. Supp. 3d. at 1136-37 (finding that dialysis-dependent prisoner with end-stage renal disease who was housed at Springfield MCFP qualified for compassionate release under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)).

D.    Release Is Not Appropriate Under the § 3553(a) Factors

Nevertheless, showing an extraordinary and compelling reason for compassionate release is just part of the analysis. The Court must still consider the factors set forth in 18 U.S.C. § 3553(a). These include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to

9

>provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*United States v. Macli*, 842 F. App'x 549, 552 n.1 (11th Cir. 2021) (per curiam) (citing 18 U.S.C. § 3553(a)).  After considering these, factors, the Court concludes that compassionate release is not appropriate.

Although Hickson's current sentence is for a non-violent offense, his conduct during the traffic stop leading to his arrest endangered the lives of arresting officers. While officers were searching his car, Hickson entered the car and attempted to drive off on an interstate highway while he and an officer were struggling for control of the vehicle. PSR ¶ 11. The car travelled 100 yards before the officer pulled his weapon and made Hickson stop. *Id.* In addition, Hickson is a career offender. One of his convictions is for aggravated assault and a criminal attempt to commit armed robbery. *Id.* ¶ 35. During the course of the attempted robbery, the victim was fatally shot. *Id.* Hickson was originally charged with murder but allowed to enter a plea to the less-serious charges. *Id.* Finally, allowing Hickson's release this early into a 295-month federal sentence would undermine the need to impose a sentence reflecting the seriousness of the crime.

Further, although end-stage renal disease is not curable, "many people live long lives while on dialysis." *Kidney Failure (ESRD) Causes, Symptoms, and Treatments*, https://www.kidneyfund.org/kidney-disease/kidney-failure (last updated July 24, 2020). Hickson's doctor noted on April 1, 2021, that he "continues to have significant

improvement." MR 1105.  She also stated that he was "ambulating without any assistance" and had "[n]o issues with peritoneal dialysis."  *Id.*  Hickson is able to independently administer his dialysis.  MR 91, 182.  Therefore, his health does not appear to be in imminent danger.  Additionally, although there are current restrictions on transplants due to Covid-19, the BOP provides for organ transplants for eligible prisoners.  MR 1261; Fed. BOP, Program Statement P6031.04: Patient Care, at 45-46 (June 3, 2014).

As for the risk posed by Covid-19, Hickson has unfortunately already contracted the virus.  On January 22, 2021, however, the Bureau of Prisons implemented its COVID-19 Vaccine Guidance and has begun administering vaccines to inmates housed in its facilities.  Fed. BOP Clinical Guidance, COVID-19 Vaccine Guidance (Jan. 4, 2021 v.7.), available at https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf (last visited Apr. 27, 2021).  The vaccine should greatly minimize Hickson's possible future exposure to the Covid-19 virus.  Hickson received his immunization on April 14, 2021.  MR 831.

## CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that Lorenzo Hickson's motion for compassionate release (ECF No. 142) be **DENIED**.  His motion for appointment of counsel (ECF No. 143) is **DENIED**.  Pursuant to 28 U.S.C. § 636(b)(1), a party may serve and file written objections to a magistrate judge's recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  The district judge shall make a de novo determination of those portions of the recommendation to which objection is made.  All other portions of the recommendation may be reviewed for clear error.

Defendant is notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 29th day of April, 2021.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE